697 P.2d 504

**Melsciner REYNOLDS, Individually and as Personal Representative of the Estate of Coretta Reynolds, Deceased, Plaintiff-Appellant,**

**v.**

**Oliver SWIGERT, M.D., and Rehoboth Christian Hospital a non-profit New Mexico corporation, Defendants-Appellees.**

**No. 7231.**

Court of Appeals of New Mexico.

Aug. 9, 1984.

Certiorari Quashed April 1, 1985.

**506**

Mark C. Meiering, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendant-appellee Rehoboth Christian Hosp.

Ray Tabet, Albuquerque, for plaintiff-appellant.

## OPINION

DONNELLY, Chief Judge.

This is a wrongful death action wherein recovery is sought against an emergency room physician and a hospital due to the alleged negligence of the emergency room physician and a nurse. Plaintiff appeals an order granting summary judgment in favor of the defendant hospital. Two issues are presented: (1) claim of error in the granting of summary judgment for the hospital; and (2) error in restricting discovery. We reverse.

The plaintiff, Melsciner Reynolds, brought this action alleging that the death of her 16-month-old daughter, Coretta Reynolds, was due to the negligence of Rehoboth Christian Hospital (hospital) and Oliver Swigert, M.D. Doctor Swigert is not a party to this appeal.

On the morning of December 28, 1978, plaintiff noticed that her daughter was feverish and listless. Plaintiff took the child first to a federal clinic, unaffiliated with the defendant hospital herein, and received several prescriptions. Three days later when the child showed no improvement, plaintiff took her to the emergency room of the defendant hospital.

Doctor Swigert was on duty in the hospital emergency room. During the time the child was examined at the emergency room she was feverish. Plaintiff also alleged that the child acted as though she did not want to be picked up or touched, and her neck was stiff.

An emergency room nurse, Melba Cooper, talked to the plaintiff concerning the child and recorded on the record the word "fever." The nurse did not take the child's vital signs.

Doctor Swigert talked to plaintiff and stated that plaintiff informed him only that the child had a fever, had been coughing, and had a head cold. Doctor Swigert examined the child, ordered an x-ray of her lungs, and diagnosed the illness as "bronchopneumonia." He gave plaintiff several prescriptions, but did not recommend that the child be admitted to the hospital. According to Dr. Swigert, at that time he was unaware that the child had been examined a few days earlier for the same complaint and had been given prescriptions.

The child's condition did not improve. On January 2, 1979, the child's neck was stiff, and she was not eating. Plaintiff took her daughter back to the hospital emergency room the following day. Another emergency room physician was on duty and, after examining the child, he ordered tests made, and diagnosed the infant to be suffering from spinal meningitis. The child was then admitted to the hospital. Despite hospitalization and medical care, the child's condition deteriorated, and she died on January 6, 1979.

Plaintiff brought suit against the hospital and Dr. Swigert, alleging medical malpractice and wrongful death. Plaintiff alleged that the hospital was liable for the negligence of both Dr. Swigert and also "one or more of its nurses, physician's assistants, agents, servants or employees." Plaintiff contended that Dr. Swigert was negligent in failing to make a proper diagnosis of the child at a time when the meningitis was treatable, and that he and the emergency room nurse failed to conduct an adequate physical examination and did not observe appropriate standards of medical care.

At the time plaintiff's daughter was taken to the hospital and treated, the hospital had a written contract with Dr. Swigert which provided in part:

1. The Physician [Swigert] agrees to furnish professional medical services to all patients who are admitted to the Hospital's emergency room for treatment, during his tour of duty, other than those patients arranging for treatment by their personal physician * * *.

\* \* \* \* \* \*

3. The Hospital will pay the Physician fees for his professional services * * *.

\* \* \* \* \* \*

5. The Physician shall charge no private fees for professional services, it being understood that his sole renumeration [sic] * * * shall be the fees specified in this agreement * * *.

6. The relationship between the Hospital and the Physician is that of contractor and provider of services, and the Hospital, acting through its active medical staff and its administrator, retains the right to exercise control over all details of the professional work performed by the Physician in the hospital's emergency room.

The hospital filed a motion for summary judgment contending that the relationship between the hospital and Dr. Swigert was not that of employer-employee, but that of a hospital and an independent contractor. The hospital also asserted that any alleged

acts or omissions of Nurse Cooper were not the proximate cause of any injury resulting to the deceased child. The hospital's motion for summary judgment was supported by the pleadings, answers to interrogatories, depositions of witnesses, and the affidavit of Ann Schauman, the hospital administrator.

No hearing was requested on defendant's motion. The trial court, on the basis of briefs of the parties, and the depositions, pleadings and affidavits submitted, granted the hospital's motion for summary judgment. The court determined that: (1) the hospital was not liable for any alleged acts or omissions of Dr. Swigert, since he was an independent contractor; and (2) any alleged acts or omissions of Nurse Cooper, toward plaintiff's daughter, did not proximately cause the death of the child. The trial court denied summary judgment as to Dr. Swigert.

## I. *Grant of Summary Judgment*

Was it proper for the trial court to grant the hospital's motion for summary judgment?

The plaintiff's amended complaint alleges that the hospital is vicariously liable for the negligence of Dr. Swigert and also for the acts and omissions of Nurse Cooper.

### (a) *Dr. Swigert*

The hospital contends that the relationship between Dr. Swigert and the hospital was one of hospital-independent contractor, and not that of employer-employee. The hospital submitted in support of its motion for summary judgment the affidavit of Ann Schauman, hospital administrator. The affidavit stated in part that the "contract with Dr. Swigert was not intended to reserve to the hospital the right to dictate * * * how he would perform examinations, make diagnosis [sic] or render treatment to emergency room patients."

█ If a physician is in fact an employee of a hospital, under the doctrine of respondeat superior the hospital may be held liable for the tortious acts of the physician

which are done in the scope of his employment. *Cooper v. Curry*, 92 N.M. 417, 589 P.2d 201 (Ct.App.1978); *Evans v. Bernhard*, 23 Ariz.App. 413, 533 P.2d 721 (1975); *Bing v. Thunig*, 2 N.Y.2d 656, 163 N.Y. S.2d 3, 143 N.E.2d 3 (1957); NMSA 1978, UJI Civ. 11.23 (Repl.Pamp.1980). *See also* Annot., 69 A.L.R.2d 305 (1960); Cunningham, *The Hospital-Physician Relationship: Hospital Responsibility for Malpractice of Physicians*, 50 Wash.L.Rev. 385 (1975).

■ As stated in *Cooper v. Curry*, however, under the majority view, when a physician is an independent contractor, and not an employee of a hospital, the hospital is not liable for the doctor's malpractice. *See also Cramer v. Hoffman*, 390 F.2d 19 (2d Cir.1968).

■ In granting summary judgment in favor of the hospital, the trial court based its ruling upon the premise that the hospital had no right to control or dictate to a physician how he should diagnose or treat plaintiff's daughter. Support for this rationale appears to have its genesis in the early decision of *Schloendorff v. Society of New York Hospital*, 211 N.Y. 125, 105 N.E. 92 (1914). This concept, however, was overruled by the same court that originally adopted it, in *Bing v. Thunig*. The principle enunciated in *Schloendorff* has been criticized in a number of subsequent recent decisions. *Beeck v. Tucson General Hospital*, 18 Ariz.App. 165, 500 P.2d 1153 (1972); *Wilson v. Lee Memorial Hospital*, 65 So.2d 40 (Fla.1953); *Edmonds v. Chamberlain Memorial Hospital*, 629 S.W.2d 28 (Tenn.App.1981); *Adamski v. Tacoma General Hospital*, 20 Wash.App. 98, 579 P.2d 970 (1978). Although a hospital as an entity cannot practice medicine, diagnose an illness or prescribe a course of treatment, it does not follow that it is not liable for the negligence of its employees, including its professional servants. *South Bend Osteopathic Hospital, Inc. v. Phillips*, Ind. App., 411 N.E.2d 387 (1980).

■ As stated in *Rice v. California Lutheran Hospital*, 27 Cal.2d 296, 163 P.2d 860 (1945), "a nurse or physician may be the servant of a hospital, thus requiring the application of the doctrine of respondeat superior even though they are performing professional acts." This concept was analyzed in *Cooper v. Curry*, and in *Beeck v. Tucson General Hospital*. A hospital is not insulated from liability where its professional employees act negligently within the scope of their employment and proximately cause injury to another. *See* UJI Civ. 11.23. *See also* Annot., 72 A.L.R.2d 396 (1960).

■ The principal test for determining whether an employer-employee relationship exists, as contrasted with that of an independent contractor, turns on the right of the employer to control the work of the employee. *Jelso v. World Balloon Corp.*, 97 N.M. 164, 637 P.2d 846 (Ct.App.1981); *Suhor v. Medina*, 421 So.2d 271 (La.App. 1982). Where there is a material factual issue as to the employment status of an emergency room physician it is error to grant summary judgment. *Suhor v. Medina; Edmonds v. Chamberlain Memorial Hospital*.

■ The affidavits, pleadings and depositions, and particularly the contract of Dr. Swigert with the hospital, indicate the existence of material issues of fact concerning whether Dr. Swigert was an employee or an independent contractor at the time of the acts and omissions alleged to constitute negligence. Whether a physician is an employee of a hospital rests upon the particular facts of each case. *Carranza v. Tucson Medical Center*, 135 Ariz. 490, 662 P.2d 455 (App.1983). Summary judgment is an extreme remedy, is to be employed with great caution, and does not properly lie if a single issue of material fact is present. *Jelso v. World Balloon Corp.; Serna v. Roche Laboratories*, Ct. App. No. 7718 (Filed July 17, 1984); NMSA 1978, UJI Civ. 4.4 (Repl.Pamp.1980).

(b) *Alleged Negligence of Other Employees*

In addition to the allegation that the hospital was liable for the claimed negligence

of Dr. Swigert in his failing to properly diagnose the illness of plaintiff's child, plaintiff also alleged *inter alia* that the hospital was vicariously liable for the failure of its emergency room nurse in assisting Dr. Swigert.

■ Under New Mexico law a hospital may be liable for the negligent acts or omissions of its agents or employees, including nurses, committed during the scope of their employment. *See Patterson v. Van Wiel*, 91 N.M. 100, 570 P.2d 931 (Ct. App.), *cert. denied*, 91 N.M. 3, 569 P.2d 413 (1977); UJI Civ. 11.23. *See also* 1 S. Pegalis & H. Wachsman, *American Law of Medical Malpractice* § 3:38 (1980). A hospital is held to a standard of care commensurate with that degree of care, skill and knowledge which is expected of a reasonably well-operated hospital, giving due consideration to all the circumstances involved. NMSA 1978, UJI Civ. 11.22 (Repl.Pamp. 1980). *See also Patterson v. Van Wiel; Pharmaseal Laboratories, Inc. v. Goffe*, 90 N.M. 753, 568 P.2d 589 (1977).

One of plaintiff's theories of negligence against the hospital is that the emergency room nurse had a duty to obtain an adequate medical history of the child, check the patient's vital signs, record this information on the emergency room chart, and to call this information to the attention of the emergency room physician on duty.

The emergency room medical form required to be used at the hospital on December 31, 1978, had a space for insertion of the patient's temperature, blood pressure, pulse, respiration and any known allergies. Nurse Cooper testified in her deposition that she took the child's temperature, but that she did not elicit any prior medical history concerning the child, nor obtain any information as to whether the child had been examined or treated elsewhere for the same complaints. She also testified that she did not feel it was necessary to take the other vital signs of the child or to record them on the medical room chart, because she thought the doctor would obtain the information if he felt it was necessary.

The plaintiff testified in her deposition that when she took her daughter to the hospital emergency room, the child was feverish, her neck was stiff, and she was whining and listless. She also stated that she told the nurse that the child was ill and had a fever. Plaintiff testified that the nurse did not ask her for any other information and asked her to undress the child so she could be examined by Dr. Swigert. Nurse Cooper stated that she recorded only what she felt was relevant—the child's temperature and the word "fever."

Plaintiff also testified that she told both Nurse Cooper and Dr. Swigert that she had taken her daughter a few days earlier to the Northside Clinic; that a physician's assistant at the clinic had given her amoxicillin and penicillin and told her to give the child aspirin; and, if her condition worsened, to take the child to McKinley General Hospital. No entry was made in the emergency room chart concerning the child's prior medical treatment.

Cooper testified that during Dr. Swigert's examination of the child plaintiff told her and the doctor that the child had a fever, a head cold and a cough. This information was typed on the emergency room chart by Dr. Swigert.

Dr. Swigert testified in his deposition that he "assume[d] that the pulse or blood pressure [of the child] had not been taken because that responsibility was, if indicated, Nurse Cooper's task," but he believed "in this case it was probably not indicated." He also testified that the nurse's failure to list the vital signs of the child would not have changed anything with respect to his diagnosis or treatment. Doctor Swigert further testified that he was not aware on December 31, 1978, when he examined the child, that she had previously been seen at the Northside Clinic and given medication.

Doctor Swigert was asked if he recalled eliciting any history of previous medical treatment of the child. He responded, "I would have listed it if she [plaintiff] had reported it to me." He was also asked:

"Q: You don't normally ask a patient whether they have been seen by anybody else?

A: No, I don't, not in the emergency room context. If they don't volunteer information to me, I don't routinely ask.

Q: Did she advise you that she had given the child anything in particular, medication of any type?

A: No. She led me—I should say she did not inform me that the child had been taking any medication. If she had informed me that the child had been taking Ampicillin, which I later discovered that she had, then I certainly would not have prescribed another type of Penicillin."

Plaintiff's expert witness, George R. Schwartz, M.D., testified by deposition that part of a nurse's training requires that she write down the medical history as it is given by the patient. Doctor Schwartz stated that there was a marked discrepancy between the medical history recorded on the hospital emergency room chart, and what the plaintiff testified that she told Nurse Cooper and Dr. Swigert. Doctor Schwartz also testified that it is the "responsibility of the nurse in the emergency department to take the vital signs without being ordered to do so," and that it was "routine, standard practice in emergency departments throughout our country ... These vital signs are usually taken—not always—taken by the nurse in the emergency department * * *." He stated that the signs "in this case might have had significance." Doctor Schwartz also testified that knowing the patient's respiratory rate is important in formulating a diagnosis of certain illnesses.

 Doctor Schwartz's deposition testimony conflicted as to whether or not the nurse's failure to record the child's vital signs contributed in any way to the death of the child. Where the testimony of a single witness conflicts on a material fact, the issue is properly a question for the jury. *Mills v. Kelly,* 99 N.M. 482, 660 P.2d 124 (Ct.App.1983). After the district court issued its letter informing counsel that it would grant the hospital's motion for summary judgment, but prior to the entry of the order granting summary judgment, plaintiff filed the affidavit of Dr. Schwartz. The affidavit stated, "[a]ssuming the facts to be true as claimed by Plaintiff from which could be anticipated [that there existed a] marked abnormality of the [child's] vital signs," it was his opinion that "based upon a reasonable degree of medical certainty, the failure of Nurse Melba Cooper * * * to adequately check and record the vital signs of Coretta Reynolds proximately contributed to her death on January 6, 1979." Courts have discretion to allow the filing of a late affidavit. *Richards v. Upjohn Co.,* 95 N.M. 675, 625 P.2d 1192 (Ct.App.), *cert. denied,* 94 N.M. 675, 615 P.2d 992 (1980). Absent a motion to strike or an objection to affidavits on summary judgment, any formal defects in the affidavits are deemed waived. *Serna v. Roche Laboratories, Inc.; Peralta v. Martinez,* 90 N.M. 391, 564 P.2d 194 (Ct. App.), *cert. denied,* 90 N.M. 636, 567 P.2d 485 (1977).

Plaintiff also filed the deposition of David Daining, M.D., a physician who saw plaintiff's daughter on January 3, 1979, and ordered the child hospitalized following his diagnosis that she had meningitis. Doctor Daining testified that certain drugs can mask the signs of meningitis. He stated that "any antibiotic could potentially mask the signs of meningitis" and that "the diagnosis would be less obvious to a person examining that child." He further stated that in such case "the fever might not be as high as it would be otherwise or perhaps other obvious signs of meningitis such as a stiff neck * * * might be slightly less evident at the time of an examination."

The trial court in its order granting the hospital's motion for summary judgment concluded that the "acts or omissions of the nurse, Melba Cooper, in taking the history of the illness of [the child], did not proximately cause, either directly or indirectly the death of Coretta Reynolds."

The hospital argues that even if the nurse failed to obtain and record the vital signs of the child and to take a complete medical history when the child was brought to the emergency room, the responsibility for making a diagnosis and determining treatment rested upon Dr. Swigert, not the nurse. The hospital also contends that Dr. Swigert conducted an examination of the child, independently took a history, and could have ordered vital signs taken if he felt it necessary. The hospital contends that any omissions on the part of the nurse did not raise a factual issue concerning whether the alleged omissions of the nurse proximately contributed to the death of the child. We disagree.

The issue of proximate cause is generally deemed a factual issue, unless all facts regarding causation are undisputed or, where as a matter of law, there is an independent, intervening cause. *Richards v. Upjohn Co. See also Harless v. Ewing,* 80 N.M. 149, 452 P.2d 483 (Ct.App.1969).

A factual discrepancy exists as to whether plaintiff told Nurse Cooper and Dr. Swigert about the child having a stiff neck and whether she informed them of the child's prior medical history and the medication that her daughter was taking. Doctor Swigert testified he did not ask plaintiff for the history of the child's prior medical treatment. Doctor Daining testified that certain medication could "mask" the symptoms of meningitis. The affidavit of Dr. Schwartz stated that in his opinion the medical care given to the child was not up to standard. Conflicting inferences can be drawn from this testimony. A party opposing a motion for summary judgment is entitled to have drawn from all the matters properly before the trial court all reasonable inferences. *Goodman v. Brock,* 83 N.M. 789, 498 P.2d 676 (1972). It is the duty of a party seeking summary judgment to show the absence of any material issues of fact. *Id.*

In *LeBlanc v. Northern Colfax County Hospital,* 100 N.M. 494, 672 P.2d 667 (Ct. App.1983), this court considered a case wherein a plaintiff contended that her husband's death was due in part to negligence on the part of hospital emergency room personnel, including a nurse. Summary judgment was reversed on the basis that a material fact question existed as to the negligence of the hospital and staff. In *LeBlanc* this court cited with approval *Ramsey v. Physicians Memorial Hospital, Inc.,* 36 Md.App. 42, 373 A.2d 26 (1977) and *McNeill v. United States,* 519 F.Supp. 283 (D.S.C.1981) (alleging negligent failure of physician to diagnose meningitis).

The court in *Ramsey* held that a hospital is vicariously liable for the negligent conduct of its nurses committed within the scope of their employment and for the failure of a nurse to relate to a physician that a child's mother had informed her that she had removed ticks from her son who was subsequently determined to have Rocky Mountain spotted fever. The court held:

> [T]here was ample evidence that the failure of the nurse to communicate this element of the patient's history to the attending physician was a serious violation of her duties as a nurse * * *.

> There was further evidence that the failure of the nurse to relate the information to the attending physician was a contributing proximate cause to the death of [one child] and the serious illness of [the other].

Similarly, in *Goff v. Doctors General Hospital of San Jose,* 166 Cal.App.2d 314, 333 P.2d 29 (1958), it was held that the failure of a nurse to call to the attention of an attending physician excessive hemorrhaging was a proper basis of liability against a hospital.

Where reasonable minds may differ on the question of proximate cause, summary judgment is not proper and the matter should be resolved by the fact finder. *LeBlanc v. Northern Colfax County Hospital; Galvan v. City of Albuquerque,* 85 N.M. 42, 508 P.2d 1339 (Ct.App.1973). The negligent act of a defendant resulting in damages to another need not be the sole proximate cause but merely a concurring cause. *LeBlanc v. Northern Colfax*

**512**

*County Hospital; see also Lopez v. Maez,* 98 N.M. 625, 651 P.2d 1269 (1982).

It is not necessary to discuss plaintiff's second point on appeal in view of our ruling upon plaintiff's first point.

The order granting summary judgment should be reversed.

IT IS SO ORDERED.

NEAL and ALARID, JJ., concur.