891 P.2d 563

**Cynthia HOUGHLAND, Individually and as Personal Representative for the Estate of Rhonda Shirel a/k/a Rhonda Corley, Plaintiff–Appellant,**

v.

**Kenneth GRANT, M.D., Frank Gallegos, M.D., and Northeastern Regional Hospital, Defendants–Appellees.**

**No. 15307.**

Court of Appeals of New Mexico.

Jan. 18, 1995.

William S. Ferguson, Will Ferguson & Associates, Albuquerque, for plaintiff-appellant.

Norman L. Gagne, Emily A. Franke, Butt, Thorton & Baehr, P.C., Albuquerque, for defendant-appellee Kenneth Grant, M.D.

Mark C. Meiering, Andrew G. Schultz, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendant-appellee Northeastern Regional Hosp.

## OPINION

PICKARD, Judge.

Plaintiff, personal representative of the estate of Rhonda Corley, brings an interlocutory appeal from the district judge's order granting summary judgment in favor of Defendant Northeastern General Hospital. The sole issue on appeal is whether the district court erred in ruling that Northeastern was

not vicariously liable for the alleged malpractice committed upon Corley by Dr. Kenneth Grant in Northeastern's emergency room. Because we find genuine issues of material fact regarding whether Dr. Grant was an agent or apparent agent of Northeastern, we reverse.

█ Northeastern's motion for summary judgment and accompanying brief sought summary judgment on the issue of Northeastern's vicarious liability for the alleged negligence of Dr. Grant and Dr. Frank Gallegos. When the district court granted Northeastern's motion, it did not distinguish between Northeastern's relationship with Dr. Grant and its relationship with Dr. Gallegos. However, at Plaintiff's urging, the only issue that the district court gave permission to pursue on interlocutory appeal, and the only issue on which this Court granted interlocutory appeal, was the issue of Northeastern's vicarious liability for Dr. Grant's actions. Thus, although Plaintiff strongly argues in her briefs that we should also consider Northeastern's relationship to Dr. Gallegos, that issue is not before us. *See Ponce v. Butts*, 104 N.M. 280, 282, 720 P.2d 315, 317 (Ct.App.1986) ("Questions raised [in the briefs], but not certified by the trial court or considered in granting this interlocutory appeal, will not be considered by this court."). Nonetheless, because of the interlocutory nature of the order granting summary judgment, nothing prohibits the district court from reconsidering the issue relating to Dr. Gallegos on remand. *See* SCRA 1986, 1–054(C)(1) (Repl.1992) (judgment adjudicating fewer than all claims is subject to revision at any time before entry of judgment adjudicating all claims).

FACTS

The following facts are taken from the record proper. On May 19, 1991, Decedent Corley presented herself three times for treatment to the emergency room at Northeastern with complaints of abdominal pain. She was treated the first two times by Dr. Grant, the third time by Dr. Gallegos. She died at home that evening.

In May 1991, Spectrum Emergency Care Inc. provided doctors to staff Northeastern's emergency room pursuant to a contract with Northeastern. Dr. Grant was an employee of Spectrum and had no contract with Northeastern. Northeastern's contract with Spectrum provided explicitly that physicians provided under the contract were considered independent contractors and that Northeastern would not exercise control over the doctors' practice of medicine. Northeastern provided space, equipment, and supplies for the operation of the emergency room. Northeastern billed patients for services rendered by physicians in the emergency room and had the power to terminate physicians provided under the contract. Physicians provided under the contract were required to comply with all policies, bylaws, rules, and regulations of Northeastern and its medical staff. Northeastern was obligated to pay Spectrum for services provided by physicians under the contract.

Northeastern's policies governing care in its emergency room included classification of patients and guidelines for utilization of the emergency department, including a list of medical procedures authorized in the emergency department. Northeastern maintained a community service plan which included among its goals the provision of twenty-four hour emergency medical services to a broad geographical area surrounding the hospital. Doctors working in Northeastern's emergency room were required to participate in a quality assurance monitoring program and were required to follow a number of other specific policies dealing with the treatment of patients according to policies adopted by Northeastern.

The district court considered all of the above facts and determined that Northeastern was entitled to judgment as a matter of law on the issue of vicarious liability. Plaintiff sought, and we granted, leave to bring an interlocutory appeal from that order.

DISCUSSION

█ Plaintiff argues that summary judgment was improperly granted because there is a genuine issue of material fact regarding whether Dr. Grant was an agent or apparent agent of Northeastern. Summary judgment is proper only if there are no

disputed issues of material fact and the movant is entitled to judgment as a matter of law. *Koenig v. Perez,* 104 N.M. 664, 667, 726 P.2d 341, 344 (1986). Northeastern alleged, and Plaintiff conceded, that Dr. Grant did not have a contract of employment with Northeastern. By this showing, Northeastern established a prima facie case that Dr. Grant was not its employee. Plaintiff then had the burden to raise at least a reasonable doubt as to whether liability should be imposed upon Northeastern for Dr. Grant's actions. *Monett v. Dona Ana County Sheriff's Posse,* 114 N.M. 452, 456, 840 P.2d 599, 603 (Ct.App. 1992).

■ While the contract between Northeastern and Spectrum specified that any doctors provided to Northeastern under the contract would be considered independent contractors and not employees of Northeastern, contractual provisions do not control the determination of whether Dr. Grant was an employee or an independent contractor. Instead of defining the relationship by the terms which Northeastern and Spectrum assigned to it, we will view the facts of this case to determine whether sufficient facts were introduced so that a rational jury could find that Northeastern should be held vicariously liable for Dr. Grant's actions. *See Chevron Oil Co. v. Sutton,* 85 N.M. 679, 681, 515 P.2d 1283, 1285 (1973) ("manner in which the parties designate a relationship is not controlling, and if an act done by one person on behalf of another is in its essential nature one of agency, the one is the agent of the other, notwithstanding he is not so called"); *see also Whittenberg v. Graves Oil & Butane Co.,* 113 N.M. 450, 456, 827 P.2d 838, 844 (Ct.App.1991), *cert. denied,* 113 N.M. 352, 826 P.2d 573 (1992); *Ulibarri Landscaping Material, Inc. v. Colony Materials, Inc.,* 97 N.M. 266, 269, 639 P.2d 75, 78 (Ct.App.1981), *cert. denied,* 98 N.M. 50, 644 P.2d 1039 (1982).

■ Both parties spend considerable time urging us to evaluate the relationship between Dr. Grant and Northeastern from the perspective of several tests for an employer-employee relationship. The primary test to determine whether a employer-employee relationship exists is the extent of the employer's right to control the details of the work of the employee. *Savinsky v. Bromley Group, Ltd.,* 106 N.M. 175, 176, 740 P.2d 1159, 1160 (Ct.App.), *cert. denied,* 106 N.M. 174, 740 P.2d 1158 (1987); *Reynolds v. Swigert,* 102 N.M. 504, 508, 697 P.2d 504, 508 (Ct.App. 1984), *cert. quashed* (N.M. Apr. 1, 1985). In determining whether an employer has the power to control an employee, a court should consider (1) direct evidence of the employer's power to control the manner and means of performance of the employee, (2) the method of payment of compensation, (3) whether the employer furnishes equipment for the worker, and (4) whether the employer has the power to terminate the employee at will. *Savinsky,* 106 N.M. at 176, 740 P.2d at 1160.

Plaintiff provided exhibits, affidavits, and deposition testimony that indicated that Northeastern had at least some control over the manner that Dr. Grant practiced medicine at Northeastern's emergency room. The contract between Spectrum and Northeastern stipulated that doctors provided by Spectrum under the contract were required to comply with Northeastern's policies, bylaws, rules, and regulations. These policies included specific guidelines on the classification and treatment of patients and procedures for contacting attending physicians. Although these policies may not by themselves raise an issue of material fact as to the power to control, *cf. Greene v. Rogers,* 147 Ill.App.3d 1009, 101 Ill.Dec. 543, 498 N.E.2d 867, 871 (Ct.1986), *cert. denied,* 113 Ill.2d 573, 106 Ill.Dec. 46, 505 N.E.2d 352 (1987); *Overstreet v. Doctors Hosp.,* 142 Ga.App. 895, 237 S.E.2d 213, 214–15 (1977) (holding that requiring separately employed emergency room physicians to comply with specific emergency room policies and procedures did not indicate control of the physicians by the hospital), we consider them together with the other facts of this case.

The contract between Northeastern and Spectrum set forth that Northeastern would provide the facilities and equipment for the emergency room and that Northeastern had the power to terminate physicians provided under the contract. While Northeastern did not directly pay Dr. Grant, this factor indicating control of an employee is not disposi-

tive. *See Yerbich v. Heald*, 89 N.M. 67, 69, 547 P.2d 72, 74 (Ct.App.1976) (power of termination only one item to be considered, not dispositive on issue of whether right to control existed). To overcome the motion for summary judgment, Plaintiff merely needed to show that there was a disputed issue of material fact concerning the right of control. By presenting evidence on three of the four factors indicating control of Dr. Grant, Plaintiff went far toward meeting this burden.

■ In the context of hospital emergency rooms, however, the right to control test is not always the most helpful test. The use of the right to control test in determining whether a professional is an employee has been criticized. *See generally* 1B Arthur Larson, *The Law of Workmen's Compensation* § 45.32(a) to (d) (1993). Requiring a physician to comply with a hospital's policies and procedures does not *per se* indicate that the hospital has sufficient control over the physician to indicate an employer-employee relationship. *See Cooper v. Curry*, 92 N.M. 417, 419–20, 589 P.2d 201, 203–04 (Ct.App. 1978), *cert. quashed*, 92 N.M. 353, 588 P.2d 554 (1979). By requiring compliance with its policies and procedures, a hospital may be merely contributing to the maintenance of professional standards, not controlling the physician. *Pamperin v. Trinity Memorial Hosp.*, 144 Wis.2d 188, 423 N.W.2d 848, 853 (1988).

Accordingly, Plaintiff has also argued a theory of apparent authority to establish liability under respondeat superior, and Plaintiff maintains that summary judgment was improperly granted because there is a genuine issue of material fact regarding whether Dr. Grant was an agent of Northeastern under the doctrine of apparent authority. Plaintiff relies upon the Restatement (Second) of Torts, which provides:

> One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though

the employer were supplying them himself or by his servants.

Restatement (Second) of Torts § 429 (1965). We focus on whether to impose liability on Northeastern for the actions of Dr. Grant rather than on the strict legal relationship between Northeastern and Dr. Grant.

■ Northeastern urges us not to consider the issue of apparent agency, claiming that Plaintiff did not bring this issue to the attention of the district court. Although Plaintiff's argument was not entirely clear, we believe that her factual and legal presentation below was sufficient to alert the district court to an issue of fact on the question of apparent or ostensible agency. Moreover, in evaluating the propriety of summary judgment, a reviewing court must look to the whole record and take note of any evidence which puts material facts in issue. *C & H Constr. & Paving Co. v. Citizens Bank*, 93 N.M. 150, 156, 597 P.2d 1190, 1196 (Ct.App. 1979). Therefore, similar to an appeal from a dismissal for failure to state a claim, we consider all of Plaintiff's arguments, provided they are supported by facts in the record. *Phifer v. Herbert*, 115 N.M. 135, 138, 848 P.2d 5, 8 (Ct.App.1993). It is particularly appropriate for us to do so in this interlocutory appeal where no considerations of finality are apparent. *See* SCRA 1–054(C)(1).

Many jurisdictions have considered the issue of apparent authority and have allowed the imposition of liability on hospitals for injuries to patients caused by emergency room doctors who ostensibly were agents of the hospital although employed by separate corporations. Those jurisdictions include: Alaska, *Jackson v. Power*, 743 P.2d 1376 (Alaska 1987); Florida, *Cuker v. Hillsborough County Hosp. Auth.*, 605 So.2d 998 (Fla.Dist.Ct.App.1992); Illinois, *Gilbert v. Sycamore Mun. Hosp.*, 156 Ill.2d 511, 190 Ill.Dec. 758, 622 N.E.2d 788 (1993), and *Monti v. Silver Cross Hosp.*, 262 Ill.App.3d 503, 201 Ill.Dec. 838, 637 N.E.2d 427 (1994); Maryland, *Mehlman v. Powell*, 281 Md. 269, 378 A.2d 1121 (1977); Michigan, *Grewe v. Mt. Clemens Gen. Hosp.*, 404 Mich. 240, 273 N.W.2d 429 (Mich.1978); Mississippi, *Hardy v. Brantley*, 471 So.2d 358, 371 (Miss.1985); New York, *Mduba v. Benedictine Hosp.*, 52

A.D.2d 450, 384 N.Y.S.2d 527 (1976); New Jersey, *Arthur v. St. Peters Hosp.*, 169 N.J.Super. 575, 405 A.2d 443 (Ct.Law Div. 1979); Ohio, *Hannola v. City of Lakewood*, 68 Ohio App.2d 61, 426 N.E.2d 1187 (1980); Oklahoma, *Smith v. St. Francis Hosp., Inc.*, 676 P.2d 279 (Okla.Ct.App.1983); Texas, *Brownsville Medical Ctr. v. Gracia*, 704 S.W.2d 68 (Tex.Ct.App.1985); Washington, *Adamski v. Tacoma Gen. Hosp.*, 20 Wash. App. 98, 579 P.2d 970 (1978); and Wisconsin, *Pamperin*, 423 N.W.2d at 848.

The doctrine of apparent authority is a broad doctrine that encompasses what appear to be two distinct theories: (1) ostensible agency, and (2) agency by estoppel, the first of which appears predicated on Restatement (Second) of Torts § 429, and the latter of which appears predicated on Restatement (Second) of Agency § 267 (1958), which provides that:

> One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.

*See Jackson*, 743 P.2d at 1380. Although each theory is based on a slightly different rationale, the two theories have been used interchangeably, resulting in misapplication of the law in some cases. *See* Diane M. Janulis & Alan D. Hornstein, *Damned If You Do, Damned If You Don't: Hospitals' Liability for Physicians' Malpractice*, 64 Neb. L.Rev. 689, 696–702 (1985). Agency by estoppel appears to have a stricter standard because it requires actual reliance upon the representations of the principal. *Jackson*, 743 P.2d at 1380. Although Plaintiff claims actual reliance in her briefs, she fails to indicate on appeal where this theory was argued or preserved below. Thus, we center our discussion on ostensible agency and, although some of the cases on which we rely appear to discuss agency by estoppel, we believe that the language in those cases on which we rely is equally applicable to the reasonable belief element of ostensible agency.

Dr. Grant and Northeastern never expressly created an agency relationship. Restatement (Second) of Agency § 1 (1958). Instead, Plaintiff has presented facts that raise a material disputed issue as to whether Northeastern, through what it represented or failed to represent to the public, may have created the impression that Dr. Grant was an agent of Northeastern. Thus, although no express agency relationship might actually have existed, the relationship between Dr. Grant and Northeastern could be one of "apparent agency."

According to the facts alleged, there are at least two reasons that might permit a jury to find that an apparent agency relationship exists between Northeastern and its emergency room physicians. The first is Northeastern's conduct that led to the creation of the apparent agency relationship. Northeastern operated a full-service emergency room facility and provided those services to the surrounding region. Northeastern thereby created the appearance of the provider of emergency medical services. When a doctor renders care in Northeastern's emergency room, the appearance is that Northeastern is rendering that care.

Particularly instructive on the issue of apparent agency in the context of an emergency room is the Ohio court's opinion in *Hannola*, 426 N.E.2d at 1187. The facts and contractual arrangements in *Hannola*, were substantially similar to the ones in the instant case. The court found that:

> By calling itself a "hospital" and by being a full-service hospital including an emergency room as part of its facilities, an institution makes a special statement to the public when it opens its emergency room to provide emergency care for people. In essence, an agency by estoppel is established by creating an effect: that is, the appearance that the hospital's agents, not independent contractors, will provide medical care to those who enter the hospital. The patient relies upon this as a fact and he believes he is entering a full-service hospital.

*Id.* at 1190. The court went on to hold that, regardless of any contractual arrangements between the doctors and other medical staff

on emergency room duty and the hospital, the hospital would be liable for injuries caused by the doctors' malpractice. *Id.*

The second reason to allow a jury to find an apparent agency relationship is the justifiable reliance element of apparent agency. Northeastern points to the Illinois court's opinion in *Gilbert*, 622 N.E.2d at 788, for its proposition that Plaintiff must show specific inducement by Northeastern to rely upon any appearance of an agency relationship. This reliance is unwarranted, especially in light of the *Gilbert* court's holding that "[t]he element of justifiable reliance on the part of the plaintiff is satisfied if the plaintiff relies upon the hospital to provide complete emergency room care, rather than upon a specific physician." *Id.* at 796.

Northeastern cites several cases from other jurisdictions for the proposition that a hospital should not be held vicariously liable under the doctrine of apparent agency. We are not persuaded by those authorities. Some have been severely undermined by subsequent cases in the same jurisdiction, such as the *Greene* line of cases, *overruled by Gilbert*, 622 N.E.2d at 793 (recognizing that the decision "in *Greene* ... overlook[ed] two realities of modern hospital care"). Other cases cited by Northeastern do not consider the specific issue of a hospital's vicarious liability in an emergency room. *See Hoffman v. Moore Regional Hosp.*, 114 N.C.App. 248, 441 S.E.2d 567 (1994), *cert. denied*, 336 N.C. 605, 447 S.E.2d 391 (1994). Finally, Northeastern points to precedents which fail to consider the issue of apparent agency, *see Griffith v. Mt. Carmel Medical Ctr.*, 809 F.Supp. 839 (D.Kan.1992), or that rely solely on vicarious liability precedent from other contexts, giving no consideration to the peculiarities of modern hospital emergency rooms. *See Shuler v. Tuomey Regional Medical Ctr., Inc.*, 437 S.E.2d 128 (S.C.Ct. App.1993); *see also Badeaux v. East Jefferson Gen. Hosp.*, 364 So.2d 1348 (La.Ct.App. 1978), and *Suhor v. Medina*, 421 So.2d 271 (La.Ct.App.1982).

When members of the public seek care at a modern hospital emergency room, they reasonably assume that the hospital is responsible for their care. *Sztorc v. Northwest*

*Hosp.*, 146 Ill.App.3d 275, 100 Ill.Dec. 135, 137, 496 N.E.2d 1200, 1202, *cert. denied* (Dec. 4, 1986). Patients seeking care from a hospital emergency room are particularly not in a position to make inquiries into the contractual relationships between the hospital and its emergency room doctors. *Hannola*, 426 N.E.2d at 1190. The very nature of a medical emergency dictates that hospitals providing emergency room services be held responsible for the actions of professionals providing such care when the elements of apparent authority are established. *Pamperin*, 423 N.W.2d at 854–57. Requiring injured plaintiffs who sought medical care from an emergency room to show that they undertook a reasonable inquiry to ascertain whether doctors in the emergency room are in fact agents of the hospital would lead to a harsh result not in accordance with the concept of modern hospitals.

In the instant case, Plaintiff produced evidence contending that Corley did in fact look to Northeastern as a comprehensive, primary care facility offering its own emergency room services with its own emergency room personnel. A fact finder could find that, by seeking to provide complete hospital emergency medical services to a broad region and by representing itself as a hospital offering such services, Northeastern assumed responsibility for any malpractice committed by the doctors employed in its emergency room. A jury could conclude that Northeastern created the appearance that the doctors in its emergency room were its own agents. If so, Northeastern cannot now protest by claiming that the doctors were independent contractors. The contractual arrangements which Northeastern had with Spectrum serve no purpose for this liability analysis other than to spawn a protracted opinion from this court.

This result must be contrasted with that taken by this Court in *Cooper*. In *Cooper*, we declined to hold a hospital vicariously liable for injuries caused by a doctor with staff privileges using the hospital for an operation undertaken as part of his separate medical practice. *Cooper*, 92 N.M. at 419–20, 589 P.2d at 203–04. We do not disturb that ruling here. Doctors with staff privileges at

a hospital may well be required to comply with specific procedures of the hospital if they wish to use the hospital's facilities for medical procedures undertaken as part of their separate medical practice. Our holding in this case does not necessarily mean that a hospital controls the doctor (in the legal sense) in his separate practice of medicine if he is simply using the hospital's facilities in furtherance of that practice, and there are no other facts in support of apparent agency. A hospital does not necessarily represent to the public that doctors with staff privileges, who have their own patients and who use the hospital facility as part of their separate medical practice, are the hospital's agents. In the emergency room context, however, at least as alleged in this case, the hospital is using the doctors to further its own business of providing emergency medical services directly to the public, with the choice of a doctor being controlled by the hospital and not the patient, as contrasted to doctors with staff privileges using the hospital to further their separate medical practices with their own individual patients. *See Pamperin*, 423 N.W.2d at 853; *Hardy*, 471 So.2d at 371–72 n. 6.

Because a jury could reasonably conclude that Northeastern was the employer of Dr. Grant, or held itself out as an emergency care provider thereby inducing patients such as Corley to rely on Northeastern for emergency care rather than any doctor specifically, the district court erred in granting summary judgment in Northeastern's favor. We reverse and remand to the district court for proceedings consistent with the analysis herein. Plaintiff is awarded her costs on appeal.

IT IS SO ORDERED.

DONNELLY and BOSSON, JJ., concur.