This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**LILLIAN and JOSE MARTINEZ,**

     Plaintiffs-Appellees,

v.                                                                                            **NO. 30,455**

**ST. VINCENT HOSPITAL, a New Mexico**
**non-profit corporation,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Barbara J. Vigil, District Judge**

Katherine W. Hall PC
Katherine W. Hall
Santa Fe, NM

for Appellees

Hinkle, Hensley, Shanor & Martin, L.L.P.
William P. Slattery
Dana S. Hardy
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**CASTILLO, Chief Judge.**

After the memorandum opinion was filed in this case, Plaintiffs filed a motion for rehearing. We have duly considered Plaintiffs' motion and now agree that Plaintiffs were entitled to summary judgment on the issue of ostensible or apparent authority. We remain confident that our conclusions as to the other issues were correct. We grant Plaintiffs' motion in part, withdraw the opinion filed on November 30, 2010, and substitute the following opinion therefor.

Defendant appeals from a judgment entered in favor of Plaintiffs after a jury trial. In this Court's notice of proposed summary disposition, we proposed to reverse based on the district court's erroneous grant of partial summary judgment prior to trial on two issues of material fact. Defendant has filed a memorandum in support of our proposed summary disposition and Plaintiffs have filed a memorandum in opposition.

**Summary Judgment on the Issue of Defendant's Vicarious Liability**

Defendant contends that the district court erred in granting Plaintiffs' motion for partial summary judgment on the issue of Defendant's liability for the acts of the hospitalists. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. The questions of whether there are no genuine issues of material fact and whether the movant is entitled to judgment as a matter of law are legal questions that we review de novo. *Id.*

2

In doing so, however, "[w]e are mindful that summary judgment is a drastic remedial tool which demands the exercise of caution in its application, and we review the record in the light most favorable to support a trial on the merits." *Woodhull v. Meinel*, 2009-NMCA-015, ¶ 7, 145 N.M. 533, 202 P.3d 126 (internal quotation marks and citation omitted), *cert. denied*, 2009-NMCERT-001, 145 N.M. 655, 203 P.3d 870. It is only when reasonable minds could not differ as to an issue of material fact that summary judgment is proper. *Id.* In New Mexico, summary judgment is viewed with disfavor because a trial on the merits is preferred. *See Romero v. Philip Morris, Inc.,* 2010-NMSC-035, ¶ 8, __ N.M. __, __ P.3d __.

In this Court's notice of proposed summary disposition, we relied on *Houghland v. Grant*, 119 N.M. 422, 429, 891 P.2d 563, 570 (Ct. App. 1995), because it is a factually analogous case involving the question of a hospital's vicarious liability for emergency room doctors who were provided to the hospital by a staffing agency. We proposed to hold that, to the degree the district court held that the hospitalists were employees of the hospital as a matter of law, summary judgment on that issue was inappropriate because a reasonable juror could conclude that the hospitalists were not employees of Defendant. We also proposed to hold that, to the degree that the district court held that the hospitalists were Defendant's ostensible agents as a matter of law, summary judgment on the issue was also inappropriate because a reasonable juror

could find that Defendant did not hold out the hospitalists as its agents.

In Plaintiffs' memorandum in opposition, Plaintiffs argue that this Court's conclusion that a reasonable juror could find that the hospitalists were not Defendant's employees was erroneous because it was based on an inappropriate legal standard. Plaintiffs assert that the "right to control" test is not the proper test to be applied to determine whether the hospitalists were the employees of Defendant because the hospitalists are professionals. Plaintiffs rely primarily on our Supreme Court's decision in *Celaya v. Hall*, 2004-NMSC-005, 135 N.M. 115, 85 P.3d 239, for their assertion that the right to control test does not apply to professionals. However, *Celaya* did not reject the right to control test, and in fact made use of the test to determine whether the clergyman in that case was an employee of the sheriff's department. *See id.* ¶ 20 ("Applying all the [relevant] factors . . . to [the d]efendant's job, and in light of the totality of the circumstances, we conclude that at the time of the incident [the d]efendant undoubtedly was an employee of the [d]epartment. Considered in context, the [d]epartment *exercised sufficient control over* [*the d*]*efendant's activities in a manner consistent with the status of employee*." (emphasis added)). Rather than rejecting the right to control test, *Celaya* simply pointed out that it is a more nuanced and multi-factored analysis than had been applied by this Court on direct appeal. *Celaya* specifically relied on the Restatement (Second) of Agency

4

§ 220(1) (1958), which is a right to control test, in that it defines an employee, as opposed to an independent contractor, as "a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." The Restatement provides that in order to determine whether one acting for another is an employee or an independent contractor, a number of factors should be considered, only one of which relates directly to the extent of control over the details of the work. *Id.* § 220(2). Because *Celaya* applied these factors pursuant to the Restatement as part of the Restatement's right to control test, we are not persuaded that the right to control test is inappropriate for professionals. Rather, *Celaya* simply indicates that the degree and nature of control over an employee will vary depending on the type of work being performed and that a whole range of factors must be examined, not just whether the employer has the right to control the particular details of the work itself.

Generally, "[w]hether the employer exercises sufficient control to be held liable for the acts of the employee is a question of fact that must be submitted to the jury." *Keith v. ManorCare, Inc.*, 2009-NMCA-119, ¶ 19, 147 N.M. 209, 218 P.3d 1257, *cert. granted*, 2009-NMCERT-010, 147 N.M. 452, 224 P.3d 1257; *see also Reynolds v. Swigert*, 102 N.M. 504, 508, 697 P.2d 504, 508 (Ct. App. 1984) (stating that whether the physician was an employee or an independent contractor of a hospital is a question

5

of fact). Although for the most part the facts about the relationship between the hospitalists and Defendant were not disputed by the parties, we do not believe that the facts led inevitably to the conclusion that the hospitalists were Defendant's employees, such that the issue could properly be decided as a matter of law. *See Ovecka v. Burlington N. S.F. Ry. Co.*, 2008-NMCA-140, ¶ 9, 145 N.M. 113, 194 P.3d 728 (indicating that when material facts are not in dispute an issue properly may be decided as a matter of law "when . . . the undisputed facts lend themselves to only one conclusion"); *Marquez v. Gomez*, 116 N.M. 626, 631, 866 P.2d 354, 359 (Ct. App. 1991) ("Even if the basic material facts are undisputed, if equally logical, but conflicting, reasonable inferences can be drawn from these facts, an award of summary judgment is improper."). Here, there was evidence presented that the hospitalists were hired by a staffing agency, had a contract with the staffing agency, were paid by the staffing agency, and had their schedules set by the staffing agency, and that the contract between the staffing agency and Defendant provided that Defendant could not exercise any control over the manner in which the hospitalists provided their services. We conclude that, based on these facts, a reasonable juror could find that the hospitalists were not employees of Defendant. Therefore, to the degree that the district court's order is construed to mean that the hospitalists were Defendant's employees as a matter of law, the ruling was erroneous.

In Plaintiffs' memorandum in opposition, Plaintiffs argue that the fact that the hospitalists were supplied to Defendant through a contract with a staffing agency is immaterial to the question of whether the hospitalists were Defendant's employees. However, Plaintiffs provide no authority that would support this assertion, and we therefore assume that no such authority exists. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). As our Supreme Court stated in *Celaya*, the totality of the circumstances of the relationship is to be considered in determining whether an employment relationship exists. *See* 2004-NMSC-005, ¶ 15. The fact that the hospitalists were provided to Defendant through a staffing agency that hired and paid them is a relevant part of the totality of the circumstances.

To the degree that the district court's order could be construed to mean that the hospitalists, although not employees of Defendant, were its agents under a theory of ostensible authority, such that Defendant could be held vicariously liable for their conduct, we conclude that the district court did not err. This Court addressed a similar issue in *Houghland*. There, the plaintiff sought to hold a hospital liable for the acts of one of its emergency room doctors, who was provided to the hospital through a contract with a staffing agency. 119 N.M. at 423-24, 891 P.2d at 564-65. We considered the theory of the doctor's "apparent authority" as a basis for imposing liability on the hospital, emphasizing that "[w]e focus on whether to impose liability

7

on [the hospital] for the actions of [the doctor] rather than on the strict legal relationship between [the hospital] and [the doctor]." *Id.* at 426, 891 P.2d at 567. Under a theory of agency by apparent authority, we "allowed the imposition of liability on hospitals for injuries to patients caused by emergency room doctors who ostensibly were agents of the hospital although employed by separate corporations." *Id.*

In determining whether the emergency room doctors were the apparent agents of the hospital, we looked to "whether [the hospital], through what it represented or failed to represent to the public, may have created the impression that [the doctor] was an agent of [the hospital]." *Id.* at 427, 891 P.2d at 568. We stated that the primary reason a reasonable juror could conclude that the emergency room doctor was the apparent agent of the hospital was that the hospital operated a full-service emergency room facility in such a manner that when a doctor provided care in the hospital's emergency room, the appearance was that it was the hospital providing that care. *Id.* We contrasted emergency room doctors, who a reasonable jury might determine were the apparent agents of a hospital, with other doctors who simply have staff privileges, because unlike those doctors, the hospital was using the emergency room doctors "to further its own business of providing emergency medical services directly to the public, with the choice of a doctor being controlled by the hospital and not the patient,

as contrasted to doctors with staff privileges using the hospital to further their separate medical practices with their own individual patients." *Id.* at 429, 891 P.2d at 570. Because the district court in *Houghland* had granted summary judgment in the hospital's favor, determining as a matter of law that the hospital could not be held liable for the acts of the emergency room doctors, we reversed.

In this case, Plaintiffs put forth evidence that would permit a reasonable juror to conclude that Defendant's actions created the appearance that the hospitalists were its agents. This included evidence Defendant advertises that it offers a hospitalist service to patients and refers to the hospitalists as "our hospitalist team," the hospitalist program is funded by Defendant, the hospitalists wear a badge with Defendant's name on it and submit all paperwork on Defendant's forms, patients do not have a choice about which hospitalist will manage their care, and patients see the hospitalists only while in the hospital and are not the patients of the hospitalists' own clinical practice since the hospitalists have no practice outside of their work for Defendant. Having made a prima facie showing that they were entitled to summary judgment on the issue of apparent authority, the burden fell on Defendant to come forward and show that a genuine issue of material fact existed. *See Oschwald v. Christie*, 95 N.M. 251, 253, 620 P.2d 1276, 1278 (1980).

In response to Plaintiffs' motion, Defendant put forth evidence that Defendant

9

made use of consent forms that specifically state that physicians on Defendant's staff are not employees or agents of the hospital, but are independent contractors. In our notice of proposed summary disposition, we proposed to hold that this evidence was sufficient to create a genuine dispute about the issue of material fact of whether Defendant's representations to the public created an impression that the hospitalists were its agents under a theory of ostensible or apparent authority. Having reviewed those forms anew, we now conclude that they are insufficient to justify our proposed disposition.

A number of the forms date back to the 1990s and are entirely unrelated to the care that gave rise to the harms Ms. Martinez suffered. These forms are immaterial. Defendant directs us to an additional form signed by Ms. Martinez in May 2004, but this was seven months prior to the admission date and treatment period during which Ms. Martinez was harmed. In our view, the May 2004 form, like the forms from the 1990s, is immaterial and does not bear on whether the hospitalists who treated Ms. Martinez in December 2004 were or were not Defendant's agents under a theory of apparent authority. We conclude that the consent forms cited by Defendant do not create a genuine issue of material fact as to the issue of apparent authority. As such, we affirm the district court to the extent it concluded that the hospitalists, although not employees of Defendant, were its agents under a theory of ostensible authority.

10

**Summary Judgment on the Issue of Causation**

Defendant contends that the district court erred in granting summary judgment on the issue of whether Dr. Pardue's negligence was a cause of Ms. Martinez's injuries in this case. Under New Mexico law, an act is a cause of an injury if it contributes to bringing about the injury, and the injury would not have occurred without it. *See* UJI 13-305 NMRA. The act need not be the only explanation for the injury, nor the reason that is nearest in time or place. *Id.* It is sufficient if the act occurs in combination with some other cause to produce the result. *Id.* However, to be a cause, the act must be reasonably connected as a "significant link" to the injury. *Id.*

Viewing the evidence in the light most favorable to support a trial on the merits, the evidence did not warrant a conclusion as a matter of law that Dr. Pardue's negligence was not a cause of the injury to Ms. Martinez, since a reasonable juror could find that Ms. Martinez's injury from the Ativan overdose would not have occurred if Dr. Pardue had not negligently stated that Ms. Martinez was, at the time of her hospitalization, taking a lot of Ativan for anxiety. *See* UJI 13-305. The evidence submitted by the parties from which a reasonable juror could reach this determination included Dr. Dickinson's order that Ms. Martinez be given Ativan under the ETOH protocol "for benzo withdrawal" from which a reasonable juror could

11

conclude that Dr. Dickinson ordered the protocol because he believed that Ms. Martinez was withdrawing from Ativan, as well as Dr. Dickinson's deposition testimony that the misinformation he received from Dr. Pardue's preoperative history notes was one factor in his decision to order the protocol. Indeed, Plaintiffs own expert summarized the foregoing succinctly.

> So, I believe that the amount of Ativan that was given in terms of the protocol was likely—was—that decision of what those dosages would be was likely informed by the fact that there was a belief that the patient actually did have a benzodiazepine—had used benzodiazepines in the past, and I believe that the amount of Ativan that was given to her is directly—directly has caused many of the events that followed that were the cause of the issues that we're discussing, of her anoxic brain injury.
> So, in that way, I believe that the lack of reconciling her previous medications at the time of admission did relate to the cause of the damages.

Although the nurse who actually administered the protocol testified that he did not know what Dr. Dickinson's order meant to him at the time, the order itself stated that it was for withdrawal from benzodiazepines, and there was medical evidence from which a reasonable juror could conclude that a larger dose of Ativan might be administered to someone who was believed to have used Ativan in the past. Therefore, viewing the evidence in the light most favorable to a trial on the merits of the issue, we hold that the district court erred in determining as a matter of law that Dr. Pardue's negligence was not a cause of Ms. Martinez's injury. Although the

12

evidence indicated that Dr. Pardue's negligence was not the only cause of Ms. Martinez's injury, a reasonable juror could find that Dr. Pardue's negligence, along with the subsequent negligence of others, combined to cause the injury to Ms. Martinez. *See id.*

In Plaintiffs' memorandum in opposition, Plaintiffs assert that a juror's conclusion that Dr. Pardue's mistake was a cause of the harm to Ms. Martinez would be founded on improper speculation, rather than facts. Plaintiffs base this argument, in part, on the evidence about the possible remedy for an Ativan overdose. We are not persuaded. A jury is permitted to draw reasonable inferences from the facts, and the facts, as outlined above, provide an adequate basis for a conclusion that Dr. Pardue's negligence was one of the causes of the harm at issue in this case, even if the evidence about the remedy is not considered.

Therefore, for the reasons stated in this opinion, we reverse the district court's determination that Dr. Pardue's negligence was not a cause of Ms. Martinez's injury. We also reverse the determination that the hospitalists were Defendant's employees as a matter of law. We affirm, however, the determination that the hospitalists, although not employees of Defendant, were its agents under a theory of ostensible authority.

**IT IS SO ORDERED.**

_____

**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**CYNTHIA A. FRY, Judge**